# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>MUBARIK IBRAHIM<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  2:23-mj-20<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  12/26/2014 - 04/19/2022  in the county of  Franklin  in the Southern  District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1956(h) | Money Laundering Conspiracy |
| 18 U.S.C. 1956(a)(1)(B)(i) | Money Laundering |
| 18 U.S.C. 1956(a)(2)(B)(i) | Money Laundering |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

*/s/ Shawn A. Mincks*
*Complainant's signature*

Shawn Mincks, Special Agent, IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  January 12, 2023

*/s/ Kimberly A. Jolson*
Kimberly A. Jolson
United States Magistrate Judge

City and state:  Columbus, OH

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AFFIDAVIT**
IN SUPPORT OF CRIMINAL COMPLAINT

I, Shawn Mincks, Special Agent, U.S. Department of the Treasury, Internal Revenue Service, Criminal Investigation, being duly sworn, depose and say that:

**Introduction and Purpose**

1. I am a Special Agent with IRS-Criminal Investigation and have been so employed since 2008. I have received specialized law enforcement training at the Federal Law Enforcement Training Center, Glynco, Georgia and additional specialized training from the IRS. My duties as a Special Agent include conducting investigations of individuals and businesses that have violated Federal Law, particularly those laws found under Title 18, Title 26 and Title 31 of the United States Code. I have participated in multiple such investigations, including several investigations related to individuals who launder funds derived from romance and other international fraud schemes.

2. I am assigned to pursue a federal criminal investigation of Mubarik Ibrahim. I contend there is probable cause to believe that Ibrahim has been involved in a conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), since at least December 2014 and committed or caused to be committed multiple acts in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 1956(a)(2)(B)(i). The information in this affidavit is either personally known to me based upon my experience, investigative activities, and analysis of records and interviews; or it has been relayed to me by other agents and/or law enforcement personnel. Because this affidavit is being submitted for the limited purpose of filing a criminal complaint, and I have not included each and every fact know to me concerning the investigation. I have set forth only the facts I believe are necessary to support the requested criminal complaint.

3. Through interviews and analysis of financial records and other documentation, I believe the investigation to date tends to show that parties known to Ibrahim have defrauded numerous individuals throughout the United States and the world through so-called "romance" and/or other fraud schemes. Furthermore, Ibrahim knowingly and willfully facilitated the receipt, concealment and transfer of funds derived from the victims of these schemes.

4. Through investigative experience I know that perpetrators of romance scams post fake profiles on various dating or social media websites, then individuals throughout the United States and the world are contacted by or enticed to initiate contact with the perpetrators. After contacting the victims online, the perpetrators use email, instant messaging services, text messaging, various smart phone applications and phone calls to build a relationship of trust with the victims. Once trust is gained, the perpetrators convince the victims to provide money for various purported reasons, all of which are untrue. The perpetrators tell many of the victims that they are overseas. The victims then wire transfer, direct transfer or deposit money into bank accounts within the

United States.  The bank account holders in the United States then transfer the fraudulently obtained funds to the scammers in myriad ways.

5. Evidence shows that Ibrahim controlled some of the accounts into which victim funds were deposited.  The victims provided the funds with the expectation that the money would be used to assist their online "friend."

6. Contemporaneous with and subsequent to the receipt of victim funds, Ibrahim disposed of the money through cash withdrawals; international and domestic wire transfers to his co-conspirators; issuances of personal checks; purchases of official checks; and personal expenditures.  The loss to all victims from whom Ibrahim received funds exceeds $750,000.

7. The affiant believes that evidence garnered so far in the investigation tends to show that Ibrahim knew that the funds he was receiving were derived from some kind of unlawful activity.  The evidence further shows that the funds were, in fact, derived from a specified unlawful activity, namely wire fraud (18 U.S.C. § 1343).  From the recipient accounts, the funds were not used in the manner promised to the victims of the fraud.  Instead, the funds were used in financial transactions designed to conceal the nature, location, source, ownership and control of the funds, in violation of 18 U.S.C. § 1956 (a)(1)(B)(i).  Many of the transactions designed to conceal the nature, location, source, ownership and control of the funds were conducted internationally, in violation of 18 U.S.C. § 1956 (a)(2)(B)(i).

## Witness Statements and Bank Account Transactions

8. According to an interview with Person 1, whose identity is known to the affiant, Person 1 met somebody she believed to be named Dennis Williams on a dating website sometime in 2014.  Williams told Person 1 that somebody he trusted had tried to steal some gold he owned, and the gold had made its way to England.  Williams told Person 1 that he needed money to pay for various fees related to retrieval of the gold, including attorney fees and taxes.  Williams promised to give Person 1 a portion of gold in return for her payment of the fees.  Person 1's granddaughter eventually discovered that Williams was not a real person.

9. Bank records show that, on December 26, 2014, Person 1 transferred $12,000 into JP Morgan Chase Bank account # xx3783.  Ibrahim had opened the account on November 7, 2014 and was the only signer on the account.  The funds were commingled with funds from other sources.  Using the commingled funds, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds, including cash withdrawals totaling at least $11,400.

10. According to an interview with Person 2, whose identity is known to the affiant, Person 2 met somebody she believed to be named Samuel George on social media in 2016.  George told Person 2 that he was in the army and serving in Iraq.  Eventually, George asked Person 2 to send him money for various reasons, including to pay storage fees related to gold bars.  Person 2 sent what she estimated to be $50,000 to various people at George's request.

11. Bank records show that on March 7, 2016, Person 2 wired $4,000 to Huntington Bank

account # xx3631. Ibrahim had opened the account on June 18, 2015 and was the only signer on the account. The funds were commingled with funds from other sources. Using the commingled funds, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Ibrahim simultaneously transmitted the proceeds of wire fraud to a place outside the United States, and the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Specifically, Ibrahim sent two transfers of $2,004.99 each, including fees, on March 8, 2016 and March 9, 2016 to Conspirator 1 in Tamale, Ghana via World Remit, an international money servicing business.

12. According to an interview with Person 3, whose identity is known to the affiant, Person 3 met somebody he believed to be named Linda Brown on social media and developed a relationship. After initial contact, Person 3 also communicated with Brown via email. Brown told Person 3 that she was from the United States, but she had travelled to London where she had a gold consignment. Brown told Person 3 that there would be a $600,000 fee to sell the gold and asked Person 3 to assist with paying the fee. Person 3 sent money to various people at Brown's direction.

13. According to an interview with Person 4, whose identity is known to the affiant, Person 4 met somebody she believed to be named James Gibson on the internet. Gibson told Person 4 that he was in the military and serving in Afghanistan. Gibson eventually asked Person 4 to send him money to pay fees associated with transporting a shipment of gold back to the United States. Person 4 sent approximately $50,000 at Gibson's direction in relation to the alleged package before realizing she had been defrauded.

14. According to an interview with Person 5, whose identity is known to the affiant, Person 5 met somebody she believed to be named Walker Michael on social media. Michael told Person 5 he was in the military. Eventually, Michael asked Person 5 to send him money to assist with expenses related to his adopted son and the shipment of a package of valuable assets. Person 5 eventually realized she had been defrauded when she found Michael's pictures on a website dedicated to revealing fraudsters.

15. Bank records show that between July 8, 2016 and October 7, 2016, funds from Person 3 totaling $52,000; funds from Person 4 totaling $50,000; and funds from Person 5 totaling $5,000 were deposited into Huntington Bank account # xx4490. Signatures on the backs of the cashier's checks received from Person 3 and Person 5 appear to match Ibrahim's signature on the signature card for Huntington Bank account # xx4490. Ibrahim had opened the account on June 26, 2015 and was the only signer on the account. The $105,000 received from Persons 3, 4 and 5 was commingled with funds from other sources. Using the commingled funds, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds, including cash withdrawals totaling at least $59,000; wires to a third party totaling $22,000; and a cashier's check issued to an online automobile auction company in the amount of $15,409.

16. World Remit, Western Union and MoneyGram (all of which are money servicing businesses) records show that Ibrahim transmitted the proceeds of wire fraud to a place outside the United

States, and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Specifically, Ibrahim transferred funds to individuals in Ghana, including Conspirator 1, who received $2,900; Conspirator 2, who received $4,800; Conspirator 3, who received $3,380; and Conspirator 4, who received $13,963.

17. Bank records show that on June 16 and June 29, 2017, checks issued by Person 3 in the amounts of $30,000 and $2,000, respectively, were deposited into US Bank account # xx4710. Ibrahim had opened the account on September 26, 2016 and was the only signer on the account. The funds were commingled with funds from other sources. Using the commingled funds, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds including wire transfers via World Remit totaling at least $7,353.27; a check issued to a third party in the amount of $23,100; and cash withdrawals totaling $1,530.

18. World Remit records show that Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Specifically, Ibrahim transferred funds to individuals in Ghana, including Conspirator 1, who received $700; Conspirator 2, who received $2,000; Conspirator 3, who received $2,000; and Conspirator 4, who received $1,600.

19. According to an interview with Person 6, whose identity is known to the affiant, Person 6 met somebody she believed to be named Mark Johnson on social media in November 2016. Johnson told Person 6 he was serving in the military in Afghanistan, and Person 6 and Johnson became "pen pals." Johnson eventually told Person 6 that he needed money to fly home to the United States. After Person 6 agreed to help, Johnson instructed Person 6 to mail money orders and send other funds. Person 6 estimates that she sent approximately $75,000 to various recipients at Johnson's request before Person 6's daughter convinced her that she had been defrauded.

20. Bank records show that, on February 21, 2017, two cashier's checks remitted by Person 6 in the amounts of $1,500 each were deposited into US Bank account # xx4710. The signatures on the backs of the cashier's checks appear to match signatures on checks issued by Ibrahim from US Bank account # xx4710. The funds were commingled with funds from other sources. Using the commingled funds, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds including wire transfers to third parties via World Remit totaling $5,354.99.

21. World Remit records show that Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Specifically, Ibrahim transferred $5,000 to Conspirator 2 in Tamale, Ghana.

22. Bank records show that, on February 21, 2017, three U.S. Postal money orders remitted by Person 6 in the amounts of $1,000 each and on which memoranda read "For Mark Johnson" were deposited into Huntington Bank account # xx4490. The signatures on the backs of the money orders appear to match Ibrahim's signature on the signature card for Huntington Bank

account # xx4490. The funds were commingled with funds from other sources. Using the commingled funds, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds by making cash withdrawals totaling at least $4,300.

23. According to an interview with Person 8, whose identity is known to the affiant, Person 8 was randomly contacted on social media in 2018 by somebody she believed to be named Raymond George. George told Person 8 he was from Florida and was in the army. At one point, George told Person 8 he was in Canada. Another time, he told Person 8 he was in Amsterdam. George asked Person 8 to send him money to assist him returning home.

24. Bank records show that between May 29, 2018 and September 7, 2018, Person 8 wired $105,900 to Ibrahim at Huntington Bank account # xx5884. Ibrahim had opened the account on March 15, 2018 and was the only signer. The funds received from Person 8 were commingled in the account with funds from other sources. Using the commingled funds on or about the dates set forth below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. May 31, 2018 - $959.99, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    b. June 11, 2018 - $2,324.51, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    c. June 26, 2018 - $1,158.79, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    d. July 6, 2018 - $746.49, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    e. July 9, 2018 - $1,995.59, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    f. July 19, 2018 - $1,903.39, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    g. July 30, 2018 - $2,180.01, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    h. July 31, 2018 - $3,284.01, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    i. August 1, 2018 - $2,181.21, including fees, via World Remit to Conspirator 3 in

Tamale, Ghana

j. August 6, 2018 - $135.00, including fees, via Wave to Conspirator 3, which was received in Ghanaian currency (Cedis)

k. August 6, 2018 - $2,617.56, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

l. August 7, 2018 - $265.00, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

m. August 9, 2018 - $1,543.09, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

n. August 13, 2018 - $365.00, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

o. August 14, 2018 - $3,271.01, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

p. August 15, 2018 - $2,304.01, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

q. August 15, 2018 - $437.00, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

r. August 17, 2018 - $3,275.51, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

s. August 20, 2018 - $2,620.51, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

t. August 21, 2018 - $3,053.51, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

u. August 24, 2018 - $3,253.54, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

v. August 28, 2018 - $3,281.59, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

w. September 10, 2018 - $1,205.91, including fees, via World Remit to Conspirator 5 in Tamale, Ghana

x. September 10, 2018 - $107.76, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

    y. September 11, 2018 - $517.50, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

    z. September 13, 2018 - $107.30, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

    aa. September 13, 2018 - $3,249.41, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    bb. September 13, 2018 - $1,093.13, including fees, via World Remit to Conspirator 5 in Tamale, Ghana

    cc. September 17, 2018 - $3,243.77, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    dd. September 17, 2018 - $3,229.81, including fees, via World Remit to Conspirator 6 in Tamale, Ghana

25. According to an interview with Person 9, whose identity is known to the affiant, someone randomly contacted Person 9 by text and asked for money to help pay for schooling for a girl because her parents had been killed in a wreck. Person 9 thought it sounded legitimate because he was instructed to send money to a Huntington Bank account. Person 9 had also previously sent money to a girl he met on an online dating website. Person 9 often receives texts and calls requesting money from him/her, and he never knows if its legitimate or not.

26. Bank records show that on September 24, 2018, Person 9 wired $5,000 to Ibrahim at Huntington Bank account # xx5884. The funds received from Person 9 were commingled with funds from other sources. Using the commingled funds on or about the date set forth below, Ibrahim engaged in a financial transaction involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. September 26, 2018 - $2,623.64, including fees, via World Remit to Conspirator 6 in Tamale, Ghana

27. According to an interview with Person 10, whose identity is known to the affiant, Person 10 met a female on social media and was the victim of an internet scam. The female asked Person 10 to send her money to assist her returning to the United States. Person 10 estimates that he sent $8,000 at the female's request. Person 10 eventually realized he had been scammed.

28. Bank records show that on September 27, 2018, Person 10 wired $3,200 to Ibrahim at Huntington Bank account # xx5884. The funds received from Person 10 were commingled with funds from other sources. Using the commingled funds on or about the date set forth below,

Ibrahim engaged in a financial transaction involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. September 28, 2018 - $2,574.34, including fees, via World Remit to Conspirator 5 in Tamale, Ghana

29. Bank records show that on October 1, 2018, Person 8 wired $25,000 to Ibrahim at Huntington Bank account # xx5884. The funds received from Person 8 were commingled with funds from other sources. Using the commingled funds on or about the dates set forth below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. October 2, 2018 - $2,432.92, including fees, via World Remit to Conspirator 5 in Tamale, Ghana

    b. October 4, 2018 - $1,733.92, including fees, via World Remit to Conspirator 5 in Tamale, Ghana

30. Bank records show that on October 5, 2018, Person 9 wired $1,500 to Ibrahim at Huntington Bank account # xx5884. The funds received from Person 9 were commingled in the account with other funds, including those received from Person 8. Using the commingled funds on or about the dates set forth below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. October 9, 2018 - $1,081.68, including fees, via World Remit to Conspirator 5 in Tamale, Ghana

    b. October 9, 2018 - $3,232.01, including fees, via World Remit to Conspirator 3 in Tamale, Ghana

    c. October 9, 2018 - $1,077.67, including fees, via World Remit to Conspirator 5 in Tamale, Ghana

31. Bank records show that on October 10, 2018, Person 9 wired $7,000 to Ibrahim at Huntington Bank account # xx5884. Bank records also show that on October 11, 2018, Person 10 wired $5,000 to Huntington Bank account # xx5884. The funds received from Person 9 and Person 10 were commingled in the account with other funds, including those received from

Person 8.  Using the commingled funds on or about the date set forth below, Ibrahim engaged in a financial transaction involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds.  Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

  a. October 12, 2018 - $3,210.95, including fees, via World Remit to Conspirator 5 in Tamale, Ghana

32. Bank records show that between October 24, 2018 and December 31, 2018 Person 8 wired an additional $13,000 and Person 9 wired and additional $8,500 to Ibrahim at Huntington Bank account # xx5884.  The funds received from Person 8 and Person 9 were commingled in the account with other funds and were exhausted through various means.

33. According to an interview with Person 11, whose identity is known to the affiant, Person 11 met somebody he believed to be named Albertina William on social media.  After initially meeting on social media, Person 11 also communicated with William via email.  William told Person 11 that she had inherited gold from her father.  William convinced Person 11 to send money to various people to pay fees, expenses and taxes needed to transport the gold from Ghana to the United States.

34. Bank records show that between January 7 and January 17, 2019, Person 11 wired $40,000 to Ibrahim at Huntington Bank account # xx4490.  The funds were commingled with funds from other sources.  Using the commingled funds and on or about the dates below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

  a. January 8, 2019 - $4,000 transfer to Huntington Bank account # xx5844

  b. January 22, 2019 - $25,000 transfer to Huntington Bank account # xx5844

  c. February 4, 2019 - $4,000 transfer to Huntington Bank account # xx5844

  d. February 5, 2019 - $8,500 transfer to Huntington Bank account # xx5844

  e. February 7, 2019 - $1,500 transfer to Huntington Bank account # xx5844

35. Bank records show the funds transferred from Huntington Bank account # xx4490 to Huntington Bank account # xx5844 on January 8, 2019 were commingled in the account with funds from other sources.  Using the commingled funds and on or about the date below, Ibrahim engaged in a financial transaction involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

  a. January 10, 2019 - $3,867.20, including fees, via TransferWise, an international money servicing business, to Conspirator 1

36. Bank records show that the funds transferred from Huntington Bank account # xx4490 to Huntington Bank account # xx5844 on January 22, 2019 were commingled in the account with funds from other sources. Using the commingled funds on or about the dates set forth below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. In two of the financial transactions, Ibrahim simultaneously transmitted the proceeds of wire fraud to a place outside the United States and the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

   a. January 23, 2019 - $4,127.58 transfer, including fees, via TransferWise to Conspirator 1

   b. January 23, 2019 - $457.20, including fees, via Wave to Conspirator 5, which was received in Ghanaian Cedis

   c. January 30, 2019 - $629.00 transfer, including fees, via Wave to Conspirator 1, which was received in Ghanaian Cedis

37. According to an interview with Person 12, whose identity is known to the affiant, Person 12 was contacted by somebody he believed to be named Patricia Batch on social media. Person 12 corresponded with Batch via text messaging applications. Eventually, Person 12 fell in love with Batch. Batch asked Person 12 to send money to various people, one of whom was in Columbus, Ohio. Person 12 discovered only later that he had been scammed.

38. Bank records show that on March 8, 2019, a check in the amount of $1,000 issued by Person 12 was deposited into Huntington Bank account # xx5844. The funds were commingled in the account with funds from other sources. Using the commingled funds on or about the dates set forth below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

   a. March 11, 2019 - $134.47 transfer, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

   b. March 11, 2019 - $699.00 transfer, including fees, via Wave to Conspirator 2, which was received in Ghanaian Cedis

39. Bank records show that on March 12, 2019, a check in the amount of $1,000 issued by Person 12 was deposited into Huntington Bank account # xx5844. The funds were commingled in the account with funds from other sources. Using the commingled funds on or about the date set forth below, Ibrahim engaged in a financial transaction involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and the transaction was designed to conceal or disguise the nature, location, source,

ownership, or control of the proceeds:

    a. March 13, 2019 - $850 transfer, including fees, via Wave to Conspirator 2, which was received in Ghanaian Cedis

40. Bank records show that on March 25, 2019 and March 27, 2019, checks in the amounts of $1,000 and $50,000, respectively, issued by Person 12 were deposited into Huntington Bank account # xx4490. The funds were commingled in the account with funds from other sources. Using the commingled funds and on or about the dates below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. March 29, 2019 - $6,500 transfer to Huntington Bank account # xx5844

    b. April 1, 2019 - $3,500 transfer to Huntington Bank account # xx5844

    c. April 4, 2019 - $5,000 transfer to Huntington Bank account # xx5844

    d. April 8, 2019 - $33,000 transfer to Huntington Bank account # xx5844

41. Bank records show the funds transferred from Huntington Bank account # xx4490 to Huntington Bank account # xx5844 on March 29, 2019 were commingled in the account with funds from other sources. Using the commingled funds on or about the date set forth below, Ibrahim engaged in a financial transaction involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. April 1, 2019 - $756 transfer, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

42. Bank records show the funds transferred from Huntington Bank account # xx4490 to Huntington Bank account # xx5844 on April 1, 2019 were commingled in the account with funds from other sources. Using the commingled funds on or about the dates set forth below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. April 4, 2019 - $100 transfer, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

    b. April 4, 2019 - $950 transfer, including fees, via Wave to Conspirator 2, which was received in Ghanaian Cedis

43. Bank records show the funds transferred from Huntington Bank account # xx4490 to Huntington Bank account # xx5844 on April 4, 2019 were commingled in the account with funds from other sources. Using the commingled funds on or about the dates set forth below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Simultaneously, Ibrahim transmitted the proceeds of wire fraud to a place outside the United States, and such transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. April 5, 2019 - $750 transfer, including fees, via Wave to Conspirator 2, which was received in Ghanaian Cedis

    b. April 8, 2019 - $447.93 transfer, including fees, via Wave to Conspirator 2, which was received in Ghanaian Cedis

    c. April 8, 2019 - $97 transfer, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

    d. April 10, 2019 - $610 transfer, including fees, via Wave to Conspirator 3, which was received in Ghanaian Cedis

44. According to an interview with Person 13, whose identity is known to the affiant, Person 13 is 90 years old. she met somebody she believed to be named Plasse Goldman on Facebook in January 2021. Goldman told Person 13 that he was a Four-Star General serving in Afghanistan. Goldman eventually asked Person 13 to send him money to help pay student loans. Goldman instructed Person 13 to send money to Mubarik Ibrahim, who was supposedly an attorney assisting Goldman in the process. Ibrahim was supposed to send the money to a diplomat in Kabul. Richardson eventually discovered she had been involved in a scam.

45. Bank records show that between February 25, 2021 and July 13, 2021, Person 13 wired $23,000 to Citizens Bank account # xx8906. Ibrahim had opened Citizens Bank account # xx8906 on September 25, 2020 and was the only signer on the account. The funds were commingled in the account with funds from other sources. Using the commingled funds and on or about the dates set forth below, Ibrahim engaged in financial transactions involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    a. March 1, 2021 - $2,500 transfer to an undetermined recipient via Cash App, a peer-to-peer money transfer service

    b. March 1, 2021 - $1,499.99 transfer to an undetermined recipient via Remitly, an international money servicing business

    c. March 2, 2021 - $720.55 transfer to an undetermined recipient via Remitly

    d. May 6, 2021 - $2,500 transfer to an undetermined recipient via Cash App

    e. May 7, 2021 - $2,500 transfer to an undetermined recipient via Cash App

    f. May 10, 2021 - $2,000 transfer to an undetermined recipient via Cash App

    g. May 10, 2021 - $1,930.47 transfer to an undetermined recipient via Remitly

    h. May 10, 2021 - $1,070.51 transfer to an undetermined recipient via Remitly

    i. May 10, 2021 – a second $1,070.51 transfer to an undetermined recipient via Remitly

    j. July 14, 2021 - $2,400 transfer to an undetermined recipient via Cash App

46. According to an interview with Person 14, whose identity is known to the affiant, Person 14 was in the process of buying a home in late March 2022 when she received communications from Greg, a person she believed to be involved in the purchase process. Greg instructed Person 14 to wire $343,576.33 to an account number in order to close on the purchase of the home. Buzzetta later spoke to others involved in the transaction and discovered that Greg was an imposter, and she had been scammed.

47. Bank records show that on March 29, 2022, Person 14 wired $343,576.33 to Citizens Bank account # xx8906. Bank records also show that on April 19, 2022, Citizens Bank returned $339,217.77 to Buzzetta due to a "fraud recall."

## Conclusion

48. Based on the information presented in this affidavit, I contend there is probable cause to believe that Ibrahim conspired with others to commit Money Laundering offenses, in violation of 18 U.S.C. § 1956(h), and committed numerous Money Laundering offenses in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 1956(a)(2)(B)(i). I further believe that these violations occurred in the Southern District of Ohio.


Shawn A. Mincks
Special Agent, IRS-CI

Subscribed and sworn to before me

This  12th  day of  January , 2023 .

Kimberly A. Jolson
United States Magistrate Judge